U. S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
FILED
JAN 1 9 2005
ROBERT H. SHEMWELL, CLERK
BY_____
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

ROBERT P. DAIGLE

CIVIL ACTION
CV05-0082 L-O

VERSUS

JUDGE MELANÇON

DONALD MCCARTHY, and THE
DIOCESE OF ALEXANDRIA

MAGISTRATE JUDGE:

MAGISTRATE JUDGE HILL

## PETITION FOR PERSONAL INJURY DAMAGES

NOW INTO COURT comes Robert P. Daigle, domiciled in Galveston County, Texas, who submits that he is entitled to Judgment of this Court for damages based on the following facts and causes of action:

## I. DEFENDANTS

Made defendants herein are:

**Donald McCarthy**, a person of the full age of majority, domiciled in Salina, Kansas, occupied as a Catholic Priest for the Diocese of Salina, Kansas; and,

**The Diocese of Alexandria, Louisiana**, a legal entity domiciled in the State of Louisiana, Parish of Rapides, through its chief executive, Bishop Ronald Herzog.

Jurisdiction of this Honorable Court is established over this claim by the occurrence of acts causing damage in the Western District of Louisiana and by the fact that this is a claim of a citizen of Texas against a Louisiana legal entity, the Diocese of Alexandria, and an individual currently domiciled in Salina, Kansas.

## II. ALLEGATION OF FACTS MATERIAL TO ALL CLAIMS

1.

In the summer of 1955, Petitioner was a 14 year old boy residing in Opelousas, St. Landry Parish, Louisiana.

2.

Leger Tremblay, a priest under the supervision and control of the Alexandria Diocese of the Catholic Church in Louisiana, prevailed upon Petitioner's parents to allow petitioner to accompany Tremblay on a visit with a friend to Cow Island, Louisiana.

3.

Tremblay introduced Petitioner to a man driving the car, identifying him as "Don his seminarian driver". Tremblay used a map he placed over Petitioner's lap to begin groping him.

4.

The Cow Island acquaintance was not home, so the rest of the trip was to no particular destination, but Tremblay began to talk about sex and ask Petitioner for sexual acts, which Petitioner resisted.

5.

The seminarian driver acted at the instruction of Tremblay throughout.

6.

Tremblay went to look for a boy named Jimmy, then the car was driven to a theater on Cameron Street in Lafayette, the stated purpose being that Tremblay was going to find the other boy to have sex with there, by then it was dark.

7.

Petitioner was told the other subject was not available, and that if he submitted the priest

would take him home. Tremblay then raped Petitioner with the physical assistance of defendant Donald McCarthy, who then also sexually abused Petitioner by committing aggravated oral sexual battery upon Petitioner.

8.

Petitioner was warned not to tell, threatened, and returned to his parents that night. Tremblay on another occasion approached him but Petitioner got out Tremblay's vehicle.

9.

Petitioner and his family were devout Catholics. The incident traumatized Petitioner to the point of Post Traumatic Stress Disorder, completely destroyed his morale, and led to the following specific damages:

    a.) Petitioner became a delinquent and committed delinquent acts

    b) Petitioner ran away from home

    c) As an adult Petitioner has been plagued by clinical depression, alcoholism, bipolar disorder and other psychological problems related to and including Post Traumatic Stress Disorder

    d) Petitioner has suffered four hospitalizations, one commitment, and two suicide attempts

    e) Petitioner has been subject to uncontrollable rage, panic, and depression

10.

Don McCarthy, defendant herein, was the seminarian driver at the time of this incident. Petitioner did not recall McCarthy's identity until June 2004.

11.

Don McCarthy had written letters to the Petitioner after the incident and had seen Petitioner at Camp Maryhill approximately one month before this incident.

12.

Don McCarthy was given "medical leave" in 1962, only a few years after his ordination in 1959, then returned to teach in Kansas and mentor boy scouts.

13.

Petitioner could not remember the names of these perpetrators until after years of therapy and investigation.

14.

In 1990 Petitioner wrote the Diocese of Alexandria, asking for information on Leger Tremblay, and it was not until January 29, 2004 that the Diocese finally confirmed that Tremblay was a pedofile priest and had abused Petitioner.

15.

In June 2004, after further investigation, Petitioner was able to locate mail from Don McCarthy, and remembered for the first time that it was Don McCarthy who was Tremblay's accomplis in the assault in 1955.

### III. CLAIM AGAINST THE CATHOLIC DIOCESE OF ALEXANDRIA

16.

Authorities in the Diocese of Alexandria were the supervising authority for Leger Tremblay at the time of his attack upon the Petitioner, as Tremblay was Pastor at Evergreen, Louisiana.

17.

In the course of his employment by the Diocese of Alexandria, his superiors became aware of Leger Tremblay's pedofilia and his abuse of adolescents in Louisiana.

18.

The Diocese adopted a policy of "containment" and secrecy and treated Leger Tremblay's

conduct and affliction as an internal matter, despite their having known or should have known that his conduct damaged adolescent males in Louisiana and the continued secrecy would impair treatment and recovery of Tremblay's victims from the trauma of sexual abuse.

19.

The conduct of the defendants herein impaired the Plaintiff's ability to complete treatment.

20.

In 1989, in therapy, Petitioner recalled that the priest who perpetrated the abuse was named Tremblay, and he wrote to the Diocese of Alexandria for information on that priest in hopes of completing therapy and treatment.

21.

Despite its knowledge that Leger Tremblay had been defrocked in 1989 because of pedofilia, the Diocese of Alexandria stonewalled Petitioner and refused to provide any information on Leger Tremblay for 15 years after specific request.

22.

The Diocese of Alexandria is therefore liable to Petitioner for the specific agony of fifteen years between the time of his first inquiry to the day in July 2004 when Auxiliary Bishop Friend finally confirmed that Leger Tremblay was a pedofile who had abused numerous youths since 1950, thereby confirming Petitioners recollections, albeit after inexcusable delay.

23.

The defendant Diocese is further liable to Petitioner because its policy of secrecy and containment compounded Petitioner's Damages for the 49 years between the incident and the July 2004 admission, despite having sufficient knowledge of Leger Tremblay's pedofilic tendencies and his ability to act upon them.

24.

Defendant Diocese also compounded Petitioner's damages because it had sufficient information well before January 2004 to understand that victims of Leger Tremblay needed factual information in order to achieve successful treatment. The policy of secrecy undertaken therefore specifically exacerbated the damage of the original act.

25.

The Diocese of Alexandria is further liable to Petitioner because although Leger Tremblay was commissioned and sanctified by the Diocese with the authority of a priest and the Diocese knew that would engender the trust and confidence of the people, the Diocese took no steps to protect the people by testing or supervising Leger Tremblay to protect against the known danger of pedophiles using the priesthood as a cover for their misdeeds.

26.

The Diocese of Alexandria, in its denials and protection of Leger Tremblay, prevented Petitioner from exercise of his legitimate rights to file suit, and Tremblay was dead by the time the church admissions were made.

27.

The Diocese of Alexandria, by its public embrace of Leger Tremblay as a shepherd of his people, wrapped him in a cloak of trust and religious loyalty without due regard for his actual psychological character, and without regard for his particular sexual dysfunction, and therefore owed a duty to the people of South Louisiana to publicly note the reason for his being defrocked, the violation of which has compounded Petitioners damages by delaying confirmation of Leger Tremblay's acts without lawful cause.

## IV. CLAIM AGAINST DONALD MCCARTHY

28.

Defendant Donald McCarthy was a seminarian from Austin Texas who, as an acquaintance of Leger Tremblay, drove the car on the night of Petitioner's rape and assisted Tremblay in the act as a principal under Louisiana Law.

29.

Post traumatic stress has prevented Petitioner from recalling McCarthy for 49 years, until in the summer of 2004, when Petitioner had progressed in therapy and was able to recall that the seminarian corresponded with him, and located a photograph provided by McCarthy.

30.

Further investigation led Petitioner to locate Father Don McCarthy at the Diocese of Salina Kansas, where he was serving in August 2004 after being ordained in 1959.

31.

Don McCarthy has, for 50 years, engaged in a continued coverup of the incidents in Lafayette, Louisiana, and despite his knowledge gained over the years of his ministry, that such a coverup would further damage Petitioner, he wilfully engaged in continuing refusal to admit his misconduct.

32.

As a direct participant in the acts complained of herein, Don McCarthy is liable to Petitioner for the damages Petitioner suffered as a result of the attack in 1954.

33.

Because defendant secured a transfer from the Diocese of Austin to the Diocese of Salina, Kansas, and therefore avoided tracing by Petitioner, and because Petitioner did not recover sufficient

memory to identify him until June of 2004, this action is timely.

34.

Circumstances including the nature of the sexual molestation, the trust required of parishioners like Plaintiff and his family by the defendants, the power and authority defendants asserted over Plaintiff as a result of his position as a Roman Catholic seminarian and the Plaintiff's tender years at the time of the sexual abuse, caused plaintiff to develop various psychological coping mechanisms including developing great guilt, shame, embarrassment, self-blame, denial, repression and dissociation from his experiences. Because of these psychological coping mechanisms, Plaintiff was unable to perceive or know the existence or nature of his psychological injuries and/or their connection to the sexual molestation perpetrated upon him by defendants.

35.

Defendants McCarthy sought and secured transfer from Austin to Kansas in an effort to evade the Plaintiff and keep his identity secret.

36.

Petitioners damages include loss of enjoyment of life ($200,000), psychological damages induced by post traumatic stress($200,000), necessary medical and psychological treatment, past, present and future ($300,000) continued emotional distress, embarrassment and humiliation ($200,000).

**THEREFORE, PETITIONER PRAYS** that there be Judgment in favor of Robert Daigle and against the Diocese of Alexandria, Louisiana, jointly and solidarily with Donald McCarthy, for $900,000 (Nine Hundred Thousand and no/100ths Dollars) and for all other relief authorized by law.

G. Paul Marx
(A Professional Law Corp.)
By

_____
G. Paul Marx (9018)
P.O. Box 82389
Lafayette, La. 70598-2389

337 237 2537
gpmarx@sprynet.com