**RECEIVED**

JUL 3 1 2006

ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

Robert P. Daigle

versus

Donald McCarthy, et al

Civil Action No. 05-0082

Judge Tucker L. Melançon

Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court are a Motion for Summary Judgment filed by Defendant Diocese of Alexandria, Louisiana (Diocese) [Rec. Doc. 28] and a Motion for Summary Judgment filed by Defendant Donald McCarthy (Fr. McCarthy or McCarthy) [Rec. Doc. 32].[1] Plaintiff Robert P. Daigle opposes these motions [Rec. Doc. 40, 41]. Each defendant has filed a reply memorandum [Rec Docs. 44, 49]. Related motions before the Court include Plaintiff's Objection to the Magistrate Judge's Ruling of March 15 [Rec. Doc. 30] which Defendant Donald McCarthy opposes [Rec. Doc. 38], and Plaintiff's Second Motion for Extension of Time to Complete Discovery [Rec. Doc. 45]. For the reasons that follow, the defendants' motions for summary judgment will be granted and the plaintiff's appeal of the magistrate judge's ruling and motion for discovery extension will be denied as moot.

---

[1] Each defendant seeks to strike the strike the affidavit of A.W. Richard Sipe [Rec. Doc. 44, 49]. Plaintiff opposes Defendant McCarthy's request to strike this affidavit [Rec. Doc. 48].

## I. Background

Plaintiff filed the instant action on January 19, 2005, alleging that Leger Tremblay (Tremblay), a priest under the supervision and control of the Diocese, and Fr. McCarthy sexually assaulted him in the summer of 1955 when he was fourteen years old [Complaint, Rec. Doc. 1].[2] Plaintiff alleges that Tremblay prevailed upon plaintiff's parents to allow petitioner to accompany Tremblay on a visit with a friend to Cow Island, Louisiana [Complaint, Rec. Doc. 1]. Plaintiff claims that the Cow Island acquaintance was not at home so Tremblay, with a seminarian as driver, went to look for a boy named Jimmy [Id.]. Plaintiff alleges that the car was driven to a theater on Cameron Street in Lafayette to find the other boy and have sex [Id.]. Plaintiff alleges that he was told that the other boy was not available and that if he submitted the priest would take him home [Id.]. Plaintiff alleges that Tremblay raped him with the assistance of the seminarian, McCarthy, who also sexually abused him [Id.].

Plaintiff first recalled the assault in a January, 1990 therapy session with a social worker, Patty Fitzpatrick (Daigle deposition at p. 40, Fitzpatrick deposition at pps. 15-17, pps. 46-50). Although he did not immediately recall Tremblay's name, plaintiff recalled that he was a priest from Evergreen Parish (Daigle deposition at 110). Plaintiff

---

[2] For the purposes of its motion for summary judgment, the Diocese does not dispute these allegations [Diocese's Statement of Uncontested Material Facts As to Which There is No Genuine Issue to be Tried at IV, V, Rec. Doc. 28].

telephoned the Evergreen Parish, learned Tremblay's name and that he was in Shreveport, and called the Shreveport Diocese to find him. (Id.). The Shreveport Diocese directed plaintiff to the church that Tremblay attended. The church provided contact information. Plaintiff then called Tremblay who did not remember him (Daigle deposition at 110 and 111).

Plaintiff contacted a lawyer (Daigle deposition, p. 182-3). Upon being told that he had a "fat chance" at success in litigating with the Catholic church, plaintiff sent a letter in which he outlined his memory to Bishop Sam Jacobs, Bishop of Alexandria Diocese, as well as to the numerous Catholic entities, newspapers, members of his family and Tremblay [Daigle deposition at 121, Diocese's Memorandum, Rec. Doc. 28 at Diocese Exhibit 1]. In the letter, plaintiff states:

> . . . In August, 1954 I was raped by Fr. Leger Trembley and his seminarian driver. I was a 13 yr. old boy at the time. . . . Tremblay did not operate in a vacuum. Only in collusion could an animal like Tremblay remain available to continue as a priest and a pedophile. The Church has always protected its own, and to hell with the results. When something is uncovered all you, the church, do is ship them off to New Mexico . . . . At age 13 years, after my coming home from church summer camp at Camp Merryhill, this priest, Tremblay, showed up at my home in Opelousas with his redheaded driver, asked my mother to take me along on a trip to Cow Island, La. . . . We had not gone two blocks when he started his moves. I fought for the next nine hours, begging him to stop. I was frightened out of my wits and could not understand the immensity of the trauma that was being imposed upon me for the mere sexual release of this pervert. I thought I had gotten a reprieve when he told his driver to go to Lafayette to find "Jimmy" because "Jimmy" would co-operate.

I soon lost the reprieve. "Jimmy" was not home or at the theater. Trembley could wait no longer - his driver drove into the dark on the side of the theater and my ordeal began. And it continues to this day. . .. Recently I spoke to an attorney in Arkansas who specializes in cases of incest, which by the way, this is classified as such. He was in sympathy, and readily stated that these effects, even after so many years, are no surprise. However, the attorney also said that the statute of limitations had expired. So, any criminal action legal recourse I might have is no more.

This leaves me with an alternative of writing to you. I can no longer find solace in my church. There is no doubt in my mind that you bear part of the responsibility and shame, because silence is complicity . . ..

[Diocese Motion for Summary Judgment, Diocese Exhibit 2 - Diocese 1, Rec. Doc. 28].

Plaintiff received a response to this letter from the Diocese. (Daigle deposition at 145, 148).

Plaintiff telephoned the Diocese on more than one occasion between 1990 and 2003, to request assistance but was rebuffed. (Daigle deposition at 158). Plaintiff met with Bishop Friend at the Alexandria Diocese in 2004 and the Bishop told him that Tremblay had been "doing this" since 1952 and had been "kicked out of the priesthood in 1986." (Daigle deposition at 163). On June 24, 2004 while watching television with his wife, plaintiff recalled the seminarian's name to be Don and that he had sexually assaulted him [Daigle deposition at 93-95, 194-195, Daigle Affidavit, Rec. Doc. 43 at 28]. Prior to that time, plaintiff states that he remembered only that the seminarian had held him while Tremblay assaulted him [Daigle Affidavit, Rec. Doc. 43 at 28]. Plaintiff

then looked for two letters he believed McCarthy had sent to him after he returned from Camp Maryhill [Daigle Affidavit, Id. at 28-29]. Plaintiff did not find the letters but he discovered McCarthy's photograph with his full name and seminary address on the back [Id.].

Defendants filed the instant motions for summary judgment urging the Court to dismiss plaintiff's action as prescribed under Louisiana law [Rec. Docs. 28 & 32].

## II. Standard of Review

A motion for summary judgment shall be granted if the pleadings, depositions, and affidavits submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56.* Once the movant produces such evidence, the burden shifts to the respondent to direct the attention of the court to evidence in the record sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 122-23 (1986). The responding party may not rest on mere allegations made in the pleadings as a means of establishing a genuine issue worthy of trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. *Id.* Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could

have found for the non-moving party. *Id.*

With respect to issues on which the movant carries the ultimate burden of persuasion, evidence must be adduced supporting each element of the defense and demonstrating the lack of any genuine issue of material fact with regard thereto. *Terrebonne Parish School Bd. v. Mobil Oil Corp.* 310 F.3d 870 at 877 (5th Cir. 2002), internal citations omitted. Ordinarily, the party pleading prescription bears the burden of proving that the plaintiff's claims have prescribed. *Id.* However, once it is shown that more than a year has elapsed between the time of the tortious conduct and the filing of a tort suit, the burden shifts to the plaintiff to prove either suspension, interruption, or some exception to prescription, utilizing one of any number of legal constructs including but not limited to the doctrine of *contra non valentem* and the theory of continuing tort. *Id.,* internal citations omitted. A genuine issue of material fact exists if the record, taken as a whole, could lead a rational trier of fact to find for the non-moving party. *Id.,* internal citations omitted. Prescriptive statutes are strictly construed against the running of prescription and in favor of the obligation sought to be extinguished. *Lima v. Schmidt*, 595 So.2d 624, 629 (La. 1992).

### III. Applicable Law

"Louisiana Civil Code article 3492 provides that delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day

injury or damage is sustained. Damage is considered to have been sustained, within the meaning of the article, only when it has manifested itself with sufficient certainty to support accrual of a cause of action. The doctrine of *contra non valentem agere nulla currit praescriptio* prevents the running of liberative prescription where the cause of action is not known or reasonably knowable by the plaintiff." *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La.1993).

The Louisiana Supreme Court has often noted that basic principle of the doctrine (*contra non valentem* ) is equity. *Terrebonne Parish School Bd. v. Mobil Oil Corp.* 310 F.3d 870 at 885 (5th Cir. 2002), internal citations omitted. The principles of equity and justice form the mainstay of the doctrine and demand suspension when the plaintiff is effectively prevented form enforcing his rights for reasons external to his own will, notwithstanding the general rule that "prescription runs against all persons unless exception is established by legislation." *Id. Contra non valentem* does not suspend prescription when a litigant is perfectly able to bring its claim, but fails or refuses to do so. *Id.*

The courts created the doctrine of *contra non valentem* as an exception to the general rules of prescription. *Wimberly v. Gatch*, 635 So.2d 206 (La. 1994). Because *contra non valentem* is a judicial exception to the statutory rule of prescription, the doctrine is strictly construed and its benefits are only extended up to the time that the

plaintiff has actual or constructive knowledge of the tortuous act. *Terrebonne Parish School Bd. v. Columbia Gulf Transmission Co.* , 290 F.3d 303 at 320 (5th Cir. 2002). Generally, the doctrine of *contra non valentem* suspends prescription where the circumstances of the case fall into one of four categories. The third and fourth category are the only ones that may possibly be applicable in this case.[3]

The third category applies where a defendant engages in conduct which prevents a defendant from availing himself of his judicial remedies. *Wimberly v. Gatch*, 635 So.2d 206 (La. 1994). In order for the third category to apply, the debtor must be guilty of conduct rising to the level of concealment, misrepresentation, fraud or ill practices. *Fontenot v. ABC Ins. Co.*, 674 So.2d 960, 962 (La. 1996). Where a plaintiff can show such an exception, prescription is suspended until a plaintiff is made aware of the truth of the matter. *In re Ford Motor Co. Bronco II Product Liability Litigation,* 982 F.Supp. 388 at 394 (E.D.La.1997). The focus remains on whether a plaintiff was able to bring his cause of action. *Henry v. Cisco Systems, Inc.*, 2004 WL 1730107, 106 Fed. Appx. 235 (5th Cir. 2004), unpublished decision.

---

[3]"The four instances recognized by Louisiana's highest court where the doctrine may apply to suspend the running of prescription are: (1) where there was some legal cause that prevented the courts from taking cognizance of or acting on the plaintiff's action; (2) where there was some condition coupled with the contract or connected with the proceedings that prevented the creditor (plaintiff) from suing or acting; (3) the debtor (defendant) himself has done some act effectually to prevent the plaintiff from availing himself of his cause of action; or (4) the cause of action is not known or reasonably knowable by the plaintiff, even though his ignorance is not induced by the defendant." *Terrebonne Parish School Bd. v. Mobil Oil Corp.*, 310 F.3d 870 at footnote 37 (5th Cir. 2002).

The fourth category, commonly known as the discovery rule, provides that prescription commences on the date the injured party discovers or should have discovered the facts upon which his cause of action is based. *Wimberly v. Gatch*, 635 So.2d 206 (La. 1994). Prescription does not accrue as it does not run against one who is ignorant of the facts upon which his cause of action is based, as long as such ignorance is not willful, negligent or unreasonable. *Id.* at 212.

### IV. Analysis

#### A. The Diocese's Motion for Summary Judgment

##### 1. Background

The Diocese concedes that it was the supervising authority for Tremblay in 1955, at the time plaintiff alleges he was attacked [Diocese Memorandum, Rec. Doc. 28 at 5]. Plaintiff's claims focus generally on allegations directly arising from the 1955 assault and on claims that the Diocese failed to voluntarily disclose and/or concealed information regarding Tremblay's pedophilia. Plaintiff claims that the Diocese was aware of Tremblay's pedophilia and adopted a policy of containment and secrecy, treating his pedophilia as an internal matter, although the Diocese knew or should have known that Tremblay's conduct damaged adolescent males in Louisiana and that such a policy of secrecy would impair his victims recovery from trauma of sexual abuse [Rec. Doc. 1 at 18]. Plaintiff claims that the Diocese took no steps to "protect the

9

people by testing or supervising" Tremblay although it had commissioned him with the authority of a priest [Id. at 25]. Plaintiff claims that the Diocese's policy of concealment and failure to "publicly note the reason for [Tremblay's] being defrocked, caused him mental agony from the time he first contacted the Diocese regarding the assault until his July, 2004 meeting with Bishop Friend, impaired his ability to obtain treatment, compounded the damages he received as a result of the assault and precluded him from filing suit [Rec. Doc. 1 at 18, 19, 20-22, 24]. The Diocese moves for summary judgment on the basis that plaintiff's claims arising from the 1955 assault are prescribed and his other claims fail to state a cause of action and are also prescribed [Diocese Memorandum, Rec. Doc. 28 at 5].

The instant lawsuit was filed more than one year after the 1955 date of the assault and, on its face, has prescribed. La.C.C. art. 3492. Plaintiff, therefore, bears the burden of proving that prescription was either suspended, interrupted or renounced. *Lima v. Schmidt*, 595 So.2d 624, 628 (La.1992).

### 2. Accrual of Cause of Action

Plaintiff contends that, until his 2004 meeting with the Diocese, he did not have sufficient information to support a claim in court and that no witness has testified that he had sufficient facts to file suit before 2004 [Plaintiff's Opposition, Rec. Doc. 41 at 6]. Though prescription under La. C.C. art. 3492 begins to run from the day injury or

damage is sustained, damage is considered to have been sustained only when it has manifested itself with sufficient certainty to support accrual of a cause of action. *Cole v. Celotex Corp.*, 620 So.2d 1154, 1156 (La.1993).

Daigle's testimony and that of his treating therapist, Patricia Fitzpatrick, is that he had blocked any memory of the event out until he first recalled that he had been abused by a priest in 1990 [Daigle deposition at 105, 106, 110, 216; Fitzpatrick deposition, Rec. Doc. 49 at 59]. Daigle testified that following his recollection of the incident during a therapy session, he began investigating, learned Tremblay's name through a priest in the Evergreen Parish, called the Shreveport Diocese, and learned the church that Tremblay attended [Daigle deposition at 110-111]. Daigle then called that church, obtained contact information for Tremblay and telephoned him [Id ]. Daigle testified that he spoke to Tremblay over the phone and accused him of the rape and that Tremblay said he did not remember him [Id]. Daigle remembered that he reported the conversation to his therapist at his next session [Id. at 111-112]. Daigle also testified that since 1990 he was aware that he was sexually assaulted by Tremblay in 1955 and that Tremblay was a priest under the authority of the Diocese of Alexandria [Id. at 216].

Thereafter, Daigle contacted a lawyer (Daigle deposition, p. 182-3). Upon being told that he had a "fat chance" at success in litigating with the Catholic church, sent his letter to the Bishop and others [Daigle deposition at 121, Diocese's Memorandum, Rec.

11

Doc. 28 at Diocese Exhibit 1]. Based on the foregoing, the Court finds that by 1990 plaintiff's damages were manifested with sufficient certainty to support accrual of a cause of action and this argument to be without merit.

### 3. Contra Non Valentem

Plaintiff relies on the doctrine of contra non valentem, contending that the Diocese's fraudulent concealment of Tremblay's pedophilia, in combination with his post traumatic stress disorder, precluded him from filing suit within a year of recalling the abuse [Plaintiff's Opposition, Rec. Doc. 41 at 5-11, 14-16]. Plaintiff argues that between the time of his first recollection and his 2004 meeting with the Bishop he was undergoing psychological treatment, suffered from alcohol abuse and had a history of two suicide attempts and numerous hospitalizations [Id. at 8-9]. Thus he asserts that he did not have a "complete vision of his abusers immediately upon his first recollection" [Id. at 9] and he did not have the mental capacity to pursue his legal remedies within a year of the recollection [Id. at 10].

Plaintiff relies on *Held v. State Farm Insurance Co.*, 610 So.2d 1017 (La. App. 1st Cir. 1992), *writs denied* 613 So. 2d 975 (La. 1993). In *Held*, the court applied the third and fourth categories of *contra non valentem* and suspended prescription for two years against a 21-year-old-daughter who filed suit against her father for sexual molestation during her minority. The court found that the daughter's post traumatic

stress syndrome which prevented her from acting until she knew she was completely innocent, coupled with her parents' refusal to pay for her therapy and college expenses, rendered her "unable to act" for purposes of the doctrine. The Court finds the *Held* case to be inapposite.

As to plaintiff's claims that the Diocese's concealment precluded him from filing suit, from the time of his 1990 recollection, plaintiff remained aware that he had been sexually abused and does not allege that the Diocese attempted to deceive him into thinking otherwise. Moreover, plaintiff testified that the Diocese did nothing to prevent him from filing suit [Id. at 182-183]. Plaintiff relies on the testimony of Ms. Fitzpatrick, his therapist, to show that his mental condition rendered him unable to act [Id. at 9]. However, Ms. Fitzpatrick's testimony was that his medical condition could *possibly* preclude him from filing suit if he was not taking his medicine, was in a psychotic episode, was severely depressed or feeling fragile [Deposition of Fitzpatrick, Rec. Doc. 49 at pps. 60-61, emphasis added]. There is no evidence to suggest that plaintiff's medical condition precluded him from filing suit for fifteen years from the time he first recollected the event in 1990 until 2005. To the contrary, plaintiff's testimony is that following his recollection, he acted on the memory, located the whereabouts of Tremblay, even contacted a lawyer and corresponded regarding the abuse with many individuals, including the Diocese, but he stopped short of filing his

13

suit. Although the record shows that plaintiff has suffered serious psychological problems, it also shows that, in the years following the recollection, plaintiff was able to attend college, obtain a degree and that he "succeeded, though modestly in [his] archaeology profession" [Daigle Affidavit]. *See Laughlin v. Breaux*, 515 So.2d 480 (La. App. 1st Cir. 1987) (holding, where plaintiff claimed she was unable to file suit since she suffered from Battered Woman's Syndrome and her treating psychologist testified that she displayed characteristics of the syndrome, including "learned helplessness," that symptom alone, was insufficient to suspend prescription. The court noted that plaintiff was running her own business, had discussed the situation with friends, counselors and her psychologist and had called the police). The focus remains on whether a plaintiff was able to bring his cause of action and, in the instant case, plaintiff has failed to show he was unable to do so.[4]

---

[4] In *John Doe I v. Henderson Independent School District*, 237 F.3d 631, 2000 WL 1701752 (5th Cir. 2000), where plaintiffs brought an action under 42 U.S.C. §1983 against the Henderson Independent School District, the Eastside Baptist Church and a school principal for sexual abuse by their teacher and pastor, arguing, among other theories, fraudulent concealment, and unsound mind due to several disorders including Post-Traumatic Stress Disorder, the Fifth Circuit Court of Appeals affirmed the district court's decision granting summary judgment on the ground that the plaintiffs' claims were barred by the statute of limitations. In that case, the abuse occurred from 1978-1981 and two defendants filed suit in 1998, nine years after reaching their 18th birthday and a third filed suit in 1999, almost fifteen years after he had turned 18. The Fifth Circuit Court of Appeals "borrowed" Texas's general personal injury limitations period and tolling periods. Under Texas law, where a defendant is under a duty to make disclosure but fraudulently conceals the existence of a cause of action to a plaintiff, the defendant is estopped from relying on a statute of limitations defense until the party learns of the right of action or should have learned of it through reasonable diligence. *Id.* at 5. The Fifth Circuit Court of Appeals agreed with the district court, that, even assuming a continuing duty to disclose, the plaintiffs possessed sufficient knowledge by the age of eighteen of facts or circumstances that would cause a reasonable person to inquire further and that, even where a fiduciary duty existed, the fact of misconduct becomes apparent it no longer can be ignored regardless of the nature of the relationship. *Id.* The Court found that fraudulent concealment did not toll the statute of limitations, noting that the plaintiffs were "painfully aware" that they had been abused and that plaintiffs did not allege that they were deceived into thinking that they were not abused. *Id.* Noting that Texas courts have

14

## 4. Continuing Tort

The Diocese moves for summary judgment of plaintiff's claims regarding a continuing tort of concealment and/or breach of duty to disclose, stating that plaintiff has failed to offer any evidence or legal basis to show that the Diocese had a duty to communicate with him following the 1955 incident [Diocese Reply Memorandum, Rec. Doc. 49 at 1-2]. Although plaintiff urges that the question of duty be determined by a jury and relies on Fitzpatrick's testimony that confirmation by the Church was essential to plaintiff's recovery, [Plaintiff Memorandum, Rec. Doc. 41 at 14], as the Diocese argues, he has not offered any evidence to show that a relationship between the Diocese and plaintiff existed or otherwise show the existence of such a duty.

To find fraud from silence or suppression of truth, there must exist a duty to speak or to disclose information. *Greene v. Gulf Coast Bank,* 593 So. 2d 630 (La. 1992). "Claims of fraudulent concealment generally require that the plaintiff allege and prove that defendant wrongfully concealed information and that plaintiff did not have actual or constructive knowledge of the information . . . ". *In re Ford Motor co, Bronco II Product Liability Lit.,* 982 F. Supp. 388 (E.D. La. 1997), relying on *Landry v. Air Line Pilots, Ass'n Int'l AFL–CIO,* 901 F.2d 404, 412-413 (5th Cir. 1990) and *United Klans*

---

generally denied tolling based on the "unsound mind" theory where a plaintiff is able to assert his legal rights, the Fifth Circuit affirmed the district court's decision denying tolling on this basis, noting that the plaintiffs had held down jobs, been married, and participated in legal proceedings. *Id.*

*of America v. McGovern,* 621 F.2d 152, 153 (5th Cir. 1980). In the instant case, plaintiff had actual knowledge of Tremblay's pedophilia from the date of his recollection - he had recalled his own sexual assault - and was aware of Tremblay's whereabouts. Because the Court finds plaintiff's level of knowledge to preclude a claim of fraudulent concealment, the Court does not address whether such a theory could otherwise state a claim upon which relief can be granted.

### 5. Conclusion as to the Diocese's Motion for Summary Judgment

Based on the foregoing, and considering the record as a whole, the Court finds that the plaintiff has not carried his burden of proving that his claims against the Diocese have not prescribed and will grant the Diocese's motion for summary judgment.

### 6. Request to Exclude Affidavit of A. W. Sipe

The Diocese requests that the affidavit of A. W. Sipe be stricken as he was not designated as an expert witness and was not disclosed until plaintiff opposed its motion for summary judgment. Plaintiff did not file an opposition. The Court determines that this affidavit is not relevant to a determination of the instant and motion and denies the request as moot.

### B. Motion for Summary Judgment by Defendant McCarthy [Rec. Doc. 32]

### 1. Background

Plaintiff alleges that McCarthy was a seminarian in Austin, Texas when he drove

the car on the night of his rape and assisted Tremblay in the sexual assault [Complaint, Rec. Doc. 1 at 28]. Plaintiff further alleges that McCarthy secured a transfer from the Diocese of Austin to the Diocese of Salina, Kansas in an effort to evade him and keep his identify secret [Id. at 33, 35]. Plaintiff also alleges that, because McCarthy secured the transfer and because he did not recover sufficient memory to identify him until June, 2004, his action is timely [Id. at 33]. McCarthy denies assaulting plaintiff [Defendant McCarthy's Reply Memorandum, Rec. Doc. 44 at 3-4] and moves for summary judgment on the basis that plaintiff's claim is prescribed on its face and should not be suspended under the doctrine of *contra non valentem* because any ignorance on plaintiff's part of facts giving rise to his cause of action was negligent or unreasonable [Defendant McCarthy's Memorandum, Rec. Doc. 32 at 13]. Defendant McCarthy asserts that plaintiff was "aware of the facts giving rise to his alleged cause of action in 1990 but he failed to take any action to enforce his claim for approximately fifteen years." (Defendant's Memorandum, Rec. Doc. 44 at 5). Plaintiff contends that he had no knowledge of his claim against McCarthy until June, 2004 when he remembered his name and that McCarthy "moved across the country between 1955 and the time of filing, effectively becoming a fugitive from justice," so that his complaint is timely [Plaintiff's memorandum, Rec. Doc. 40 at p. 11]. Plaintiff relies on correspondence from McCarthy to Fr. Goetz, dated April 9, 1962 [Plaintiff's Memorandum, Rec. Doc. 40 at 3 and

17

Exhibit I]; correspondence between Bishop Freking and Bishop Reicher [Id. at 4 and Exhibits C, D]; correspondence between Bishop Reicher and Bishop Vogel [Id. at 4, Exhibit E] and other correspondence to support an inference that defendant relocated, in accordance with the practice of the Catholic Church, to prevent him from filing suit [Id. at 5]. Plaintiff also relies on the affidavit of Richard Sipe to show that he was treated for pedophilia [Id. at 5 and Exhibit F]. Plaintiff also submits the affidavit of Dr. Friedberg, a psychiatrist to support his argument that his memory of McCarthy was suppressed until June, 2004 [Id. at 7, Exhibit N, Rec. Doc. 57.].

## 2. Accrual of Cause of Action

The Court is not persuaded that plaintiff did not possess sufficient knowledge to support a cause of action against defendant McCarthy prior to his recollection in 2004. Although plaintiff did not recollect the incident until the therapy session in 1990 with Ms. Fitzpatrick, in that session he remembered that a "red haired" seminarian drove the car, and had held him while he was assaulted. The Court finds that at this point the plaintiff was aware of sufficient facts to begin the running of prescription and became responsible to seek out defendant McCarthy. *Knaps v. B & B Chemical Co., Inc.*, 828 F.2d 1138 at 1140 (5th Cir. 1987).

## 3. Contra Non Valentem

Plaintiff argues that McCarthy moved to Kansas to concealed his identity from

him and deceive him. "Concealment of his identity by a defendant by silence alone is not enough to toll the running of prescription. Additionally, he must be guilty of some trick or contrivance tending to exclude suspicion and prevent the plaintiff from bringing his action. There must also be reasonable diligence on the part of the plaintiff to ascertain the identity of the party injuring him and the means of knowledge are the same in effect as knowledge itself." *Arceneaux v. Motor Vehicle Cas. Co.* 341 So.2d 1287, 1291 (La. App. 3rd Cir. 1977). Plaintiff's testimony is that when he recalled the seminarian's name in 2004, he discovered in his possession a photograph of McCarthy with McCarthy's name on the back (Daigle Deposition, 93-95, 113, 194-195). Plaintiff states that, after finding the photograph, he went to the public library in Galveston, looked at school albums and found a picture of McCarthy that looked like the seminarian (Daigle Deposition, 97-98). Moreover, the record shows that plaintiff investigated and discovered the identity of Tremblay after the initial recollection in 1990 and contacted the Alexandria Diocese regarding its complicity in the matter. Had plaintiff filed his action, the discovery process would have been available to assist in identifying and locating McCarthy as a defendant. Further, based on the reasons stated above, the Court finds that plaintiff's medical condition, specifically Post Traumatic Stress, did not impair his memory nor capacity to act to preclude him from filing suit on a timely basis.

*5. Conclusion as to the Defendant McCarthy's Motion for Summary Judgment*

Based on the foregoing, and considering the record as a whole, the Court finds that the plaintiff has not carried his burden of proving that his claims against defendant McCarthy have not prescribed and will grant defendant's motion for summary judgment.

*5. Request to Exclude Affidavit of A. W. Sipe*

In his Reply Brief in Support of His Motion for Summary Judgment [Rec. Doc. 44], Defendant McCarthy requests that the affidavit of A. W. Richard Sipe be stricken because plaintiff has not properly designated him as an expert witness [Rec. Doc. 44 at 2]. Plaintiff argues that he requires the affidavit to rebut McCarthy's claim that he was treated at the Via Coeli for depression rather than pedophilia in light of defendant's refusal to produce his mental health records [Plaintiff's Opposition to Motion to Strike the Affidavit of Richard Sipe [Rec. Doc. 48]. Because the Court finds that plaintiff possessed sufficient knowledge and the ability to bring his cause of action within a year of a 1990 recollection, it is unnecessary to consider the Sipe Affidavit and defendant's motion is denied as moot.

*C. Plaintiff's Motion for Rule 56(f) Discovery Extension [Rec. Doc. 45] and Plaintiff's Objection to the Magistrate Judge's Ruling of [Rec. Doc. 30]*

Plaintiff also seeks an extension of the February 28, 2006 discovery cut-off, contending that he timely filed requests for discovery, including interrogatories and

requests for production and that, although counsel for the Diocese promised production three times, counsel for the Diocese has never produced them. Plaintiff also contends that defendant McCarthy has refused to produce his mental health records. Plaintiff seeks production of these documents in connection with defendants' motions for summary judgment. Neither the Diocese nor defendant McCarthy filed an opposition. Plaintiff also objects to the Magistrate Judge's ruling denying his Motion to Compel the production of defendant McCarthy's Medical records. Defendant McCarthy opposed the objection [Rec. Doc. 38] and plaintiff filed a reply memorandum [Rec. Doc. 39]. For the following reasons, these motions will be denied.

Plaintiff argues that materials sought include (1) information on prior settlements and that "he cannot be sure that some deposition or statement by Leger Tremblay might not lurk in those files" [Plaintiff's Memorandum, Rec. Doc. 45 at 2], and (2) medical records of Father McCarthy will support his theory of "coverup by the Defendants including efforts to construe psychological problems as "depression" when they were actually something else [Plaintiff's Motion, Rec. Doc. 45]."[5] Plaintiff concludes that "any gaps in the evidence are the sole result of a lack of compliance with the affirmative duty to provide discovery [Plaintiff's Memorandum, Rec. Doc. 45 at Summary]." The

---

[5] These records are also at issue in Plaintiff's Objection to the Magistrate Judge's Discovery Ruling of March 15 [Rec. Doc. 30].

Diocese has not offered any justification for its failure to respond to plaintiff's discovery.

To obtain a continuance of a motion for summary judgment in order to obtain further discovery, a party must indicate to the court by some statement, preferably in writing (but not necessarily in the form of an affidavit), why he needs additional discovery and how the additional discovery will create a genuine issue of material fact. *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435 at 1442 (5th Cir. 1993), relying on *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1266-67 (5th Cir.1991), *cert. denied*, 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992); *Washington v. Allstate Ins. Co.*, 901 F.2d 1281, 1286 (5th Cir.1990). The nonmoving party "may not simply rely on vague assertions that additional discovery will produce needed, but unspecified facts." *Id.*, relying on *Spence & Green Chemical Co.*, 612 F.2d at 901. If it appears that further discovery will not produce evidence creating a genuine issue of material fact, the district court may, in the exercise of its discretion, grant summary judgment. *Id., relying on Netto v. Amtrak*, 863 F.2d 1210, 1216 (5th Cir.1989); *International Shortstop*, 939 F.2d at 1267.

As discussed in this memorandum ruling, this Court has determined that plaintiff's cause of action against the defendants had manifested itself with sufficient certainty to support accrual of a cause of action as of 1990, following his recollection

of the assault. Operating on his recollection of the incident which included both the memory that a priest and seminarian were involved, plaintiff investigated and contacted Tremblay, contacted a lawyer and then the Diocese as well as numerous others. Although plaintiff suffers from psychological problems, he was able to act on his recollection as described above and has also managed to obtain a degree and work to a certain degree in the archaeology field. Plaintiff has not shown that the evidence requested in connection with the Motion for Extension of Discovery Cut-off will create an issue of fact that his claims have not prescribed and, accordingly the motion will be denied as moot.

COPY SENT:
DATE: 1-31-06
BY: gbr
TO: JLM